# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Board of Trustees of the Glazing Health and Welfare Fund, et al.,<br><br>Plaintiffs<br><br>v.<br><br>Z-Glass, Inc., et al.,<br><br>Defendants<br><br>And all related matters. | Case No.: 2:17-cv-01638-JAD-NJK<br><br>**Order re: Motions for Partial Summary Judgment, to Dismiss, and to Quash Service of Process**<br><br>[ECF Nos. 15, 53, 55, 58, 84] |

Plaintiffs are construction-related, employee-benefit trusts and associations (Trusts) who bring this ERISA[1] action against Z-Glass, Inc. and its principals, Weina Zhang and Gregory Olin, and their other companies Zetian Holding, Inc., Western Glass Systems, Inc., and Zetian Systems West, Inc. (the Employers).[2] This case concerns a labor agreement between Z-Glass and nonparty the International Union of Painters and Allied Trades, District 15, Glaziers, Architectural Metal and Glassworkers' Local Union 2001, under which Z-Glass allegedly agreed to contribute to the Trusts on behalf of their employees. The Trusts theorize that all of the Employers are bound by Z-Glass's agreement because they are alter egos of one another. The Trusts claim that, since January 1, 2012, the Employers have performed—but not reported— covered work to the Trusts or contributed to the Trusts for that work and have refused to fully comply with the Trusts' demands to conduct compliance audits.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq.

[2] ECF No. 40 (second-amended complaint). Plaintiffs also named four other defendants who have all since been dismissed from this lawsuit.

The Trusts now move for partial summary judgment "as to liability" against Z-Glass and "compelling an audit" against all of the Employers.[3] The Trusts have not demonstrated that they are entitled to this relief, nor have they demonstrated that they are entitled to judgment as a matter of law on the question of alter-ego liability, which appears to be the only thread that ties the Employers to Z-Glass's audit obligations. I therefore deny the Trusts' summary-judgment motion in its entirety.

Zetian Holding, Inc. moves to dismiss under FRCP 12(b)(2) for lack of personal jurisdiction, arguing that it can only be sued in Delaware, its place of incorporation, because it is a passive holding company that doesn't have a principal place of business and whose contacts with Nevada are *de minimis*.[4] The Trusts have made a prima facie showing that this court has general personal jurisdiction over Zetian Holding, so I deny its dismissal motion.

Weina Zhang moves to dismiss under FRCP 12(b)(6) for failure to state a claim against her.[5] The Trusts have alleged facts sufficient to state a plausible claim for relief against Zhang under ERISA and through an alter-ego theory of liability, so I deny her dismissal motion.

Finally, Gregory Olin moves to quash service of process and to dismiss under FRCP 12(b)(4) and (5) for failure to timely effectuate service of process on him.[6] The Trusts have not demonstrated that they substantially complied with Rule 4 in serving Olin, but I am not convinced that this defect cannot be cured. I therefore grant Olin's motion to quash, deny his motion to dismiss, and give the Trusts an additional 60 days to properly serve him under Rule 4.

---

[3] ECF No. 15.
[4] ECF No. 53.
[5] ECF No. 58.
[6] ECF Nos. 55 (quash), 84 (dismiss).

**Discussion**

**A.     The Trusts' motion for partial summary judgment [ECF No. 15]**

*1.     Summary-judgment standard*

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[8] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[9]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[10] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[11]

---

[7] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[8] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[9] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[11] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

### 2. The Trusts haven't demonstrated the absence of any genuine issue of material fact.

The Trusts' motion triggered a dispute about what issues they are seeking summary judgment on, which boils down to this: the Employers believe that the Trusts seek summary judgment on three issues: (1) Z-Glass's liability for any unpaid contributions and other costs imposed by ERISA; (2) all of the Employers are liable, under an alter-ego theory, for any contributions and other costs imposed by ERISA that Z-Glass failed to pay; and (3) the Trusts are entitled to an order compelling all of the Employers to submit to an audit.[12] So, the Employers respond that the Trusts have not demonstrated the absence of genuine issues of material fact for any of these issues, particularly that the Employers are alter egos of one another.[13] The Trusts argue in reply that the Employers misunderstood their motion: the Trusts aren't seeking summary judgment on alter-ego liability, they seek judgment only as to Z-Glass's "liability and the compelling of an audit of all [the Employers] based upon all of the alter[-]ego factors being met."[14]

It appears that even the Trusts are confused about what relief they're seeking. In three consecutive sentences in their reply, the Trusts assert that "a substantial number of alter[-]ego factors have already been met[,]"[15] that they are entitled to audit all of the Employers "based upon all of the alter[-]ego factors being met[,]"[16] and that the Trusts "did not ask for summary judgment on alter ego because the determination of alter ego is a fact[-]intense inquiry and no

---

[12] *Compare* ECF No. 15 *with* ECF No. 21 *and* ECF No. 24 at 3.

[13] *See generally* ECF No. 21.

[14] ECF No. 24 at 3.

[15] *Id.* at 3, lns. 3–4

[16] *Id.* at lns. 5–6.

4

discovery has been done."[17] I read the Trusts' motion as seeking summary judgment on all three issues because the Trusts' argument that they are entitled to an order compelling *all of the Employers* to submit to an audit is toothless without also arguing that the Employers are alter egos of one another as a matter of law.

### a.     *The Trusts' "as to liability" argument is deficient.*

The Trusts argue that: (1) Z-Glass admitted to performing work under the labor agreement after the last audit period and claims to have made all contributions for that work as required by the labor agreement; (2) ERISA requires employers to contribute to multiemployer plans in accordance with the terms of the plans or collectively bargained agreements; and (3) the labor agreement that Z-Glass signed requires it to contribute to the Trusts. So, the Trusts conclude, "while the full value of liability is a matter for later proceedings, no dispute exists that Z-Glass is liable for any unpaid contributions and other costs imposed by ERISA."[18]

But the Trusts don't provide any evidence to show that Z-Glass didn't make all of the required contributions that, even according to the Trusts' own argument, Z-Glass has claimed to have made. They provide a copy of the labor agreement that purports to require Z-Glass to contribute to numerous trust funds and associations, but only one of them—the Local 2001 Political Action Fund—is clearly a plaintiff here.[19] They provide the governing document for

---

[17] *Id.* at lns. 7–8.

[18] ECF No. 15 at 6.

[19] ECF No. 14-1 at 14, Art. 17.1 (stating that contributions are due to "the various Glassworkers Employees' Benefit Plan, 'Glaziers' and Glassworkers' Pension Trust, Glaziers Joint Apprenticeship Trust, Glaziers' and Glassworkers' Vacation Trust, Joint Conference Committee, Industry promotion and IUPAT'"); *id.* at 12, Art. 14.1(a) (stating that the employer agrees to contribute to the "Glaziers' Health and Welfare Trust"); *id.* at 12, Art. 15.1 (stating that the employer agrees to make contributions "to the appropriate Pension Funds as detailed in the Appendix A of this Agreement"; Appendix A provides the contribution amount but does not identify what "the appropriate Pension Funds" are); *id.* at 13, Art. 16.2(a) (stating that the employer agrees to contribute to "the Local Union 2001 joint apprenticeship trust for the Glazing

5

only one of the dozen plaintiff trusts and associations, and only a two-page excerpt of that agreement at that.[20] The Trusts' five-sentence blurb about liability isn't a fully formed and properly supported summary-judgment argument, so I deny their motion as to that issue.

### b. *The Trusts' audit argument fails because its alter-ego one is deficient.*

It is undisputed that Z-Glass is the only defendant who signed the labor agreement. The Trusts suspect that Z-Glass has not paid all of the contributions that it was required to make to the Trusts under that agreement. The Trusts also suspect that Z-Glass's principals, Weina Zhang and Gregory Olin, intentionally shut down that entity's operations and opened other entities—Zetian Systems West, Inc., the now-dismissed Zetian Systems, Inc., and the bankruptcy-seeking Western Glass Systems, Inc.—to continue the same operations but avoid Z-Glass's obligations under the labor agreement. The Trust funds thus move for an order compelling all of the Employers to submit to an audit and argue that they are entitled to this relief as a matter of law because Z-Glass agreed to audits when it signed the labor agreement and the other Employers are bound to Z-Glass's agreement because they are alter egos of one another.[21]

"Alter ego" and "single employer" are two "conceptually related" theories of liability that courts and the National Labor Relations Board have developed "to guard against" abuses that might occur when a contractor conducts business through a "double breasted" operation—where

---

Industry"); *id.* at 15–16, Art. 19.1 (stating that the employer will deduct a 3% administration fee from wages and remit it to the union's local administrator); *id.* at 16, Art. 20.1 (stating that the employer agrees to contribute to the "Industry Promotion Fund"); *id.* at 26, Art. 34.1 (stating that the employer agrees to contribute to the "Painters and Allied Trades Labor Management Cooperation Fund"); *id.* at 27, Art. 35.1 (stating that the employer agrees deduct from the employees' wages and remit to the "International Union of Painters and Allied Trades Political Action Committee (PAC) Fund" and the "Local 2001 Political Action Fund").

[20] *See* ECF No. 14-2 at 10–11.

[21] ECF No. 15 at 6–14.

"the same contractor owns both union and non-union companies for legitimate business purposes."[22] To establish a prima facie case on the question of alter ego, plaintiffs must first make the "threshold showing" that the defendant companies constitute "a single employer."[23] "The criteria for determining whether two firms constitute a single employer are (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations."[24] Second, plaintiffs must demonstrate that the non-union defendant companies were created or are "being used 'in a sham effort to avoid collective bargaining obligations,' rather than for the pursuit of legitimate business objectives untainted by 'union animus.'"[25]

The Trusts argue and provide minimal evidence about the first element, but they don't address the second element at all. The Trusts state in their reply that they aren't even seeking summary judgment on the question of alter-ego liability because that "is a fact intense inquiry and no discovery has been done."[26] So, by their own admission, the Trusts are not entitled to summary judgment on the question of alter-ego liability. They argue that they are entitled to audit all of the Employers if they make only a partial showing that those individuals and entities are Z-Glass's alter egos, yet they provide no authority to support that standard. I therefore deny the Trusts' summary-judgment motion as to an order compelling an audit and alter-ego liability.

---

[22] *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing and Pipefitting Indust. of the U.S. and Canada, AFL-CIO v. Nor-Cal. Plumbing, Inc.*, 48 F.3d 1465, 1469–70 (9th Cir. 1994), *cert. denied*, 528 U.S. 1156.

[23] *Id.* at 1470 (quoting *Brick Masons Pension Trust v. Indust. Fence & Supply, Inc.*, 839 F.2d 1333, 1336 (9th Cir. 1988)).

[24] *Id.* at 1471.

[25] *Id.* at 1470 (quoting *Brick Masons Pension Trust*, 839 F.2d at 1336; *Haley & Haley, Inc. v. NLRB*, 880 F.2d 1147, 1150 (9th Cir. 1989) (per curiam)).

[26] ECF No. 24 at 3.

**B.     Zetian Holding's motion to dismiss for lack of personal jurisdiction [ECF No. 53]**

Zetian Holding moves to dismiss under FRCP 12(b)(2) for lack of personal jurisdiction, arguing that it can only be sued in Delaware, its place of incorporation, because it is a passive holding company that doesn't have a principal place of business and whose contacts with Nevada are *de minimis*.[27] The Trusts respond that this court has general jurisdiction over Zetian Holding because Nevada is Zetian Holding's principal place of business and also because the contacts of its alleged Nevada alter egos are imputed to it.[28] The Trusts argue that imputing the contacts of those alter egos gets this court specific jurisdiction, too.[29]

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."[30] "Where, as here, the motion is based on written materials rather than an evidentiary hearing," the inquiry is whether the plaintiffs, through their "'pleadings and affidavits[,] make a prima facie showing of personal jurisdiction.'"[31] "[U]ncontroverted allegations in the complaint must be taken as true . . . . [and] [c]onflicts between parties over statements contained in the affidavits must be resolved in the plaintiff's favor."[32]

I apply Nevada law to decide whether personal jurisdiction exists over Zetian Holding.[33] "Because [Nevada's] long-arm jurisdictional statute is coextensive with federal due process

---

[27] ECF No. 53.

[28] *Id.* at 4–7.

[29] *Id.* at 7–8.

[30] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[31] *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)).

[32] *Id.* (internal citations omitted).

[33] *See id.* Personal jurisdiction can be acquired by personal service over the defendant, *Cripps v. Life. Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669, and ERISA provides for nationwide service of

requirements, the jurisdictional analyses under state law and federal due process are the same."[34]
"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[35]

"The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business."[36] "To simplify the jurisdictional inquiry, the Supreme Court has defined 'principal place of business' to mean 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.'"[37] "This 'nerve center' is 'typically . . . found at a corporation's headquarters.'"[38] "[A] corporation's principal place of business 'should normally be the place where [it] maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings . . . .'"[39]

"A holding company, however, is not 'normal.' It engages in little activity, so there is little to direct, control, or coordinate. Its purpose—holding interest in other companies—is

---

process, 29 U.S.C. § 1332(e)(2), but no party mentions whether this court has personal jurisdiction over Zetian Holding under this standard and I decline to address it sua sponte.

[34] *See Schwarzenegger*, 374 F.3d at 800–01; Nev. Rev. Stat. § 14.065(1) ("A court in this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States.").

[35] *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[36] *Raza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).

[37] *3123 SMB LLC v. Horn*, 880 F.3d 461, 463 (9th Cir. 2018) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)).

[38] *Id.* (quoting *Hertz*, 559 U.S. at 81).

[39] *Id.* at 465.

9

passive."[40] For holding companies, therefore, the Ninth Circuit "look[s] to the location in which [the holding company's] officers or directors meet to make high-level management decisions.'"[41] The Ninth Circuit recently concluded in *3123 SMB LLC v. Horn* that a newly formed "holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere."[42]

There is no evidence in the record about where Zetian Holding has—or is supposed to have—its board meetings. Zetian Holding provides the declaration of Weina Zhang, who is an officer of that corporation, who testifies merely that it is "a passive holding company"; incorporated and registered under Delaware law; a shareholder in Z-Glass; and owned real property in Nevada from 2010–2012.[43] The Trusts' evidence shows that, on an annual franchise tax report that Zetian Holding filed with the State of Delaware, the corporation listed its principal place of business as Las Vegas, Nevada.[44] Zetian Holding replies that the address listed on that report is merely a business-mailing address, and it provides evidence showing that it is a UPS store.[45]

---

[40] *Id.* (internal citation omitted).

[41] *Id.* at 466 (quoting *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 345 n.19 (3d Cir. 2013)).

[42] *Id.* at 468.

[43] ECF No. 53 at 4, ¶¶ 3–5.

[44] ECF No. 72-1.

[45] ECF No. 76 at 11.

But the Trusts' evidence also shows that Weina Zhang has an address in Las Vegas[46] that is owned by Gregory Olin, who is also an officer of that corporation.[47] The Trusts' evidence further shows that Zetian Holding has listed two other Las Vegas addresses as its own on documents that were publicly filed in Nevada.[48] There is no evidence that Zetian Holding has an address in Delaware or anywhere else but Nevada. I thus conclude that the Trusts have made a prima facie showing that personal general jurisdiction exists over Zetian Holding because the only evidence before me indicates that this corporation is directed from Nevada.[49] I therefore deny Zetian Holding's motion to dismiss for lack of personal jurisdiction.

**C.     Zhang's motion to dismiss for failure to state a claim [ECF No. 58]**

Zhang moves to dismiss under FRCP 12(b)(6), arguing that the Trusts have not properly stated any claims for relief against her.[50] Federal Rule of Civil Procedure 8 requires every complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[51] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[52] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"[53]; the facts

---

[46] ECF No. 72-1.

[47] ECF No. 72-2.

[48] ECF No. 72-3 at 6, 8; ECF No. 72-4.

[49] Because I find that the Trusts have made a prima facie showing that this court has general personal jurisdiction over Zetian Holding under the "nerve center" test, I need not—and do not—reach their other arguments on this issue.

[50] ECF No. 58.

[51] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[52] *Twombly*, 550 U.S. at 570.

[53] *Iqbal*, 556 U.S. at 678.

11

alleged must raise the claim "above the speculative level."[54] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[55]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[56] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[57] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[58] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[59] A complaint that does not permit the court to infer more than the mere possibility of misconduct has alleged—but not shown—that the pleader is entitled to relief, and it must be dismissed.[60]

The Trusts sue all of the Employers for breach of the labor agreement, violating ERISA, and breaching ERISA-fiduciary duties.[61] The Trusts claim that the Employers performed covered labor after January 1, 2012, but have not submitted any reports or contributed to the

---

[54] *Twombly*, 550 U.S. at 555 (internal citation omitted).

[55] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

[56] *Iqbal*, 556 U.S. at 678–79.

[57] *Id.*

[58] *Id.* at 679.

[59] *Id.*

[60] *See Twombly*, 550 U.S. at 570.

[61] ECF No. 40 at ¶¶ 51–73.

Trusts for that work.[62] The Trusts also claim that they have not been able to conduct a complete payroll-compliance audit with the limited documents that the Employers have provided.[63] Although Z-Glass is the only defendant who signed the labor agreement, the Trusts allege that Zhang and the other Employers are all liable for Z-Glass's alleged failings because they are alter egos of one another.[64] To flesh out their theory, the Trusts allege that Zhang is an "employer" as that term is defined under ERISA[65] and "has been an officer and director of each of the [Employers]."[66] Further, that "each of the [Employers] has been operating under common management and control by" Zhang and Gregory Olin.[67] The Trusts contend that the Employers have the same "ownership and management structure," address, telephone numbers, legal representation, accountants, resident agent or agents, and qualified individuals or managing officers on their contractor's licenses.[68] They also contend that the Employers have "engaged in substantially similar business" by "performing work in the glass and glazing industry in Nevada and California."[69] The Trusts allege that Z-Glass's operations were intentionally terminated and taken over by the other Employers, who are not union shops, to avoid Z-Glass's obligations under the labor agreement.[70] To that end, the Trusts allege that the Employers "have transferred projects, contracts, and covered labor" between themselves and Z-Glass "and have commingled

---

[62] *Id.* at ¶¶ 46–48.
[63] *Id.* at ¶ 49.
[64] *Id.* at ¶¶ 43–50.
[65] *Id.* at ¶ 17.
[66] *Id.* at ¶ 38.
[67] *Id.*
[68] *Id.* at ¶ 39.
[69] *Id.* at ¶ 40.
[70] *Id.* at ¶¶ 41–43.

13

assets in an effort to avoid Z-Glass's obligations under the" labor and trust agreements.[71] I find that the Trusts have alleged facts sufficient to state a plausible claim for relief against Zhang under ERISA and through an alter-ego theory of liability,[72] so I deny Zhang's motion to dismiss.

**D.  Olin's motions to quash service of process and dismiss for ineffective service of process [ECF Nos. 55, 84]**

Gregory Olin moves under FRCP 12(b)(4) and (5) to either quash service of process or dismiss the claims against him for failure to properly serve him with process.[73] "'A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [FRCP] 4.'"[74] "'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'"[75] "However, '[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4.'"[76] The plaintiff bears the burden of establishing that service was proper.[77] If service is found to be deficient, the court has discretion to dismiss the claims or quash service.[78]

Counsel for the Trusts declares that he performed public-record searches to determine where Olin resided, and that all of the records identified 98 Pleasant Street in Franklin, New

---

[71] *Id.* at ¶ 44.
[72] *See supra* A(2)(b) (providing the elements for alter-ego liability in labor-law context).
[73] ECF Nos. 55 (quash), 84 (dismiss).
[74] *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013) (quoting *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009)).
[75] *Id.* at 975 (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).
[76] *Id.* (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)).
[77] *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).
[78] *S.J. v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

Hampshire, as Olin's address.[79] The Trusts' process server testifies that Olin was served via substituted service on a "Dan Olin," who identified himself as a relative and co-resident of Olin at the Pleasant Street address, on March 6, 2018.[80]

Twenty days later, Olin moved to quash service, arguing that it was not effective under FRCP 4(e)(2)(B) because the Pleasant Street address is neither his dwelling nor his usual place of abode.[81] Olin testifies that he has lived in Thailand for the last four years, more than two years have passed since he last visited the United States, and he does not have a residence or abode in New Hampshire.[82]

Nearly three months after moving to quash, Olin moved to dismiss for failure to timely effectuate service of process, repeating the arguments from his motion to quash and also arguing that the process server's declaration is materially inaccurate, which he supports with the declaration of Dan Darling.[83] Darling testifies that he is the owner and resident of 98 Pleasant Street in Franklin, New Hampshire, and has been since 2012.[84] According to Darling, Olin "does not reside" at that address "and he has never resided here."[85] Darling testifies that Olin, however, "is permitted to use [the] New Hampshire address as a business mailing address."[86] Darling says that he "never stated to the process server who appeared at [his] house that [his]

---

[79] ECF No. 62-7 at 3–4, ¶¶ 4–11.
[80] ECF No. 62-8 at 2 (process server's declaration of service).
[81] ECF No. 55.
[82] *Id.* at 4, ¶¶ 3–4 (Olin's declaration in support of motion to quash service).
[83] ECF No. 84.
[84] *Id.* at 9, ¶ 3.
[85] *Id.* at ¶ 4.
[86] *Id.* at ¶ 6.

15

name is Dan Olin" because "[his] last name is not Olin."[87] Darling testifies that he "never stated that Gregory Olin resides at [his] house nor did [he] say that Gregory Olin is a co-resident of [his] house."[88]

The Trusts argue that service was proper because, in leaving the documents with a person of suitable age and discretion at a residential address that Olin has linked to himself in the public record, the Trusts substantially complied with Rule 4(e)(2)(B). That rule requires service at the individual's "dwelling or usual place of abode[,]" but the evidence doesn't show that Olin held the Pleasant Street address out as either. Olin lists that address with the Nevada Secretary of State for his position as the president of Z-Glass, but the listing doesn't identify whether it is his business address or residence,[89] and the Nevada statute that governs filing requirements for private corporations permits him to provide either.[90] The same is true for the information that the Nevada Secretary of State has for Olin as a managing member of Fuyi Properties, LLC.[91] The address listed for Olin with the Clark County Assessor is either a "mailing address"[92] or merely an "[a]ddress."[93] And the address listed for Olin with the State of Delaware is not designated as business, mailing, or residence.[94]

---

[87] *Id.* at ¶ 9.

[88] *Id.* at 10, ¶ 10.

[89] ECF No. 62-1 at 3.

[90] *See* Nev. Rev. Stat. § 78.150(1)(d) (stating that corporations organized under Nevada laws must provide an annual list of officers and directors that contains, among other things, "[t]he address, **either residence or business**, of each officer and director listed" (emphasis added)).

[91] ECF No. 62-2 at 2; Nev. Rev. Stat. § 86.269(1) (requiring the company's annual list to set forth the address, "either residence or business," of each listed manager or member).

[92] ECF No. 62-3 at 2.

[93] ECF No. 62-4 at 2.

[94] *See* ECF No. 62-6 at 4.

I find that the Trusts have failed to demonstrate that they substantially complied with Rule 4, but I am not convinced that this unintentional defect in service cannot be cured. So, I grant Olin's motion to quash service of process, deny his motion to dismiss, and give the Trusts an additional 60 days from today to properly serve him under Rule 4.[95]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that the Trusts' motion for partial summary judgment **[ECF No. 15] is DENIED.**

IT IS FURTHER ORDERED that Zetian Holding's motion to dismiss for lack of personal jurisdiction **[ECF No. 53] is DENIED.**

IT IS FURTHER ORDERED that Zhang's motion to dismiss for failure to state a claim **[ECF No. 58] is DENIED.**

IT IS FURTHER ORDERED that Olin's motion to quash service **[ECF No. 55] is GRANTED**, and Olin's motion to dismiss for failure to effectuate service of process **[ECF No. 84] is DENIED. The Trusts have until October 23, 2018, to properly serve Gregory Olin under FRCP 4.** The Trusts must file proof of service with the court within 10 days after they accomplish this service.

Dated: August 24, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[95] Rule 4(m) states that the 90-day time limit for service does not apply when serving an individual in a foreign country under FRCP 4(f). This does not mean, however, that the Trusts have an unlimited amount of time to effectuate service; district courts have inherent authority to control their dockets and manage the civil cases that are before them.

17