# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Board of Trustees of the Glazing Health and Welfare Fund, et al., | Case No.: 2:17-cv-01638-JAD-NJK |
| Plaintiffs | |
| v. | **Order Granting in Part Motions for Summary Judgment and Granting Western Glass Systems, Inc.'s Motion to Dismiss** |
| Z-Glass, Inc., et al., | |
| Defendants | [ECF Nos. 122, 123, 124, 125, 126, 128] |
| And all related matters. | |

Plaintiffs are construction-related, employee-benefit trusts and associations (Trusts) who bring this ERISA[1] action against Z-Glass, Inc. and its principals, Weina Zhang and Gregory Olin, and their other companies Zetian Holding, Inc. (ZHI), Western Glass Systems, Inc. (WGS), and Zetian Systems West, Inc. (ZSW) (collectively, the Employers).[2]  This case concerns unpaid ERISA contributions mandated by labor agreements between Z-Glass and ZSW and non-party Las Vegas and Northern California units of a glaziers' union.  The plaintiffs assert claims for breach of contract, ERISA, and breach of fiduciary duties based on their allegations that Z-Glass and ZSW failed to pay contributions relating to construction at the Smith Center in Las Vegas and three projects in Northern California.  The plaintiffs also assert that the other Employers are liable for these obligations under various alter ego theories.  The plaintiffs, Z-Glass, ZSW, Zhang, and ZHI bring motions for summary judgment on a number of issues.  WGS moves to dismiss for failure to timely effectuate service of process.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq.

[2] ECF No. 40 (second-amended complaint).  Plaintiffs also named four other defendants who have all since been dismissed from this lawsuit.

I find that no genuine issue of fact remains as to whether Z-Glass is responsible for remaining contributions for the Smith Center project, whether ZSW is responsible for contributions for the three Northern California projects before the termination of its labor agreement, and whether Z-Glass is responsible for contributions for the three Northern California projects before and after the termination of ZSW's labor agreement.  So I grant in part and deny in part the motions for summary judgment filed by the plaintiffs, Z-Glass, and ZSW.  However, Zhang and ZHI are not responsible for the outstanding ERISA contributions under any of the plaintiffs' theories.  So I grant their motions for summary judgment.  Finally, I dismiss the plaintiffs' claims against WGS because plaintiffs failed to effectuate timely service of process and do not oppose WGS's motion to dismiss.

## Background

### I.   Z-Glass and the Smith Center Project—NV Agreement

Olin and Zhang formed Z-Glass (under the name Z-Wall) under Nevada law to install glass, glazing, and curtain wall for their company Zetian Systems, Inc. (ZSI).[3]  Both companies twice executed a Glazing Industry Master Labor Agreement ( NV Agreement) with IUPAT District Council 15, Glaziers Architectural Metal and Glassworkers' Local Union 2001 (the Las Vegas Union).[4]  The NV Agreement requires Z-Glass to contribute to the Trusts for each hour of glazing labor.[5]  Although the NV Agreement's jurisdiction is Southern Nevada, the so-called "out of area work" clause extends its reach to other areas.[6]  And the so-called "preservation of

---

[3] ECF Nos. 128-1 at 4-7; 2-5; 128-2 at 4; 128-3 at 4; 128-5 at 6.

[4] ECF Nos. 128-13; 128-15.

[5] ECF Nos. 128-15 at 13–14; 128-14 at ¶ 11.

[6] ECF Nos. 128-15 at 5, 18; 128-14 at ¶ 23.

work" clause extends it to other entities under common ownership with Z-Glass.[7]   The NV

Agreement remains in force.[8]

　　　　In 2011 and 2012, Z-Glass performed glazing work on the Smith Center in Las Vegas.[9]

The Trusts later conducted an audit of Z-Glass's payroll records and determined that the

company underpaid contributions to the Trusts for the work.[10]   The Trusts brought a claim,

which was subsequently settled.[11]   The auditor later determined that Z-Glass had still failed to

make all of the required contributions, totaling roughly $14,000 in unpaid contributions, interest,

liquidated damages, and audit fees.[12]   After the Smith Center project and amidst the collapse of

the economy in Southern Nevada, Z-Glass ceased operations.[13]   Z-Glass was formally dissolved

on August 3, 2012, but was later revived on June 24, 2013.[14]

## II.   ZSW and the Northern California projects—the CA Agreement

　　　　Shortly before Z-Glass was dissolved, Olin and Zhang formed ZSW in California.[15]

ZSW held a California contractor's license and its officer Kevin Youngblood was the qualified

employee for purposes of holding the license.[16]   Youngblood also executed the Northern

California Glaziers Master Agreement (the CA Agreement) with District Council 16 of the

---

[7] ECF No. 128-15 at 4.

[8] ECF No. 128-14 at ¶ 26.

[9] ECF No. 127 at ¶ 29.

[10] ECF No. 128-28 at ¶ 6.

[11] ECF No. 128-25.

[12] ECF Nos. 128-14 at ¶ 32; 128-27 at 4.

[13] ECF No. 127 at ¶ 66.

[14] ECF No. 128-1 at 9–10.

[15] *Id.* at 9; ECF No. 128-10 at 3.

[16] ECF No. 127 at ¶ 50.

International Union of Painters and Allied Trades (the Northern California Union).[17]  The CA Agreement required ZSW to make contributions to the Trusts for work including handling, cutting, processing, preparing, setting or removing of all types of glass, sealants, and caulks; and fabrication, assembly and installation of metals and other materials relative to store front, curtain wall, and window construction.[18]  The CA Agreement also included preservation-of-work and out-of-area-work clauses mirroring those in the NV Agreement.[19]  ZSW sent a letter to District Council 16 seeking to terminate the CA Agreement in March 2014, and the termination became effective June 30, 2015.[20]

ZSW used Northern California Union labor for two projects in Northern California in 2012 and 2013.[21]  It completed three other window projects in Northern California before the CA Agreement terminated,[22] but it failed to use Northern California Union labor or pay contributions to the Trusts for nearly all of that work.[23]  ZSW took the position that, because these projects involved units that were prefabricated in China, they were outside the scope of the CA Agreement.[24]  ZSW used members of the Ironworkers Union instead.[25]  The Northern California Union filed a grievance but later abandoned it.[26]  An auditor determined that ZSW owed unpaid

---

[17] *Id.* at ¶ 49; ECF No. 127-2 at 9.

[18] ECF No. 128-20 at 22, 44–45.

[19] *Id.* at 5–6.

[20] ECF Nos. 128-21; 128-22.

[21] ECF No. 127 at ¶ 51.

[22] *Id.* at ¶ 52; ECF Nos. 128-54; 128-55; 128-65; 128-74.

[23] ECF Nos. 23 at ¶ 14; 127 at 52–53; 128 at 12.

[24] ECF No. 127 at ¶ 53.

[25] *Id.*

[26] *Id.* at ¶¶ 54–56.

contributions relating to the three Northern California projects totaling $2,432,960.16, interest in the amount of $460,466.67, liquidated damages in the amount of $368,942.54, and audit fees in the amount of $26,234.[27]

## III.    Olin and Zhang's control of the other Employers

Olin and Zhang own, manage, and control ZSI, Z-Glass, ZSW, and ZHI.[28]  Some of the Employers have used common addresses,[29] phone numbers,[30] insurers,[31] and internet addresses.[32]  The Employers' websites list projects completed by other Employers.[33]  And ZSW paid a portion of the prior settlement relating to Z-Glass's Smith Center project.[34]

## Discussion

## I.    WGS's motion to dismiss [ECF No. 126]

Federal Rule of Civil Procedure 4(m) requires service of the summons and complaint within 90 days of the complaint's filing, and "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[35]  In their response to WGS's motion, the plaintiffs state that they do not oppose the motion because WGS's alleged debt to the plaintiffs was discharged in bankruptcy in

---

[27] ECF Nos. 128-28 at ¶¶ 7–14; 128-61 at 5.

[28] ECF Nos. 128-3 at 8; 128-5 at 13, 19–20.

[29] *See, e.g.*, ECF Nos. 128-6 at 2; 135-4 at 8.

[30] *See, e.g.*, ECF Nos. 135-4 at 3; 135-10 at 1.

[31] ECF No. 135-15.

[32] *See, e.g.*, ECF Nos. 128-8 at 11; 128-11 at 11.

[33]  ECF Nos. 135-12; 135-13.

[34] ECF No. 135-26 at 3.

[35] Fed. R. Civ. Pro. 4(m).

November 2018.  Regardless of whether the alleged debt still exists, however, there is no dispute that WGS has still not been served with process in the more than  two years since the plaintiffs filed their second amended complaint.  So I grant WGS's motion to dismiss for failure to timely effectuate service of process.

## II.   Motions for summary judgment [ECF Nos. 122, 123, 124, 125, 128]

### A.  Summary-judgment standard

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[36]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[37]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[38]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[39]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must

---

[36] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[37] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[38] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[39] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

Case 2:17-cv-01638-JAD-NJK   Document 145   Filed 07/15/20   Page 7 of 19
present significant probative evidence tending to support its claim or defense."[40]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[41]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[42]  "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[43]

**B. Z-Glass's liability for the Smith Center project**

The Trusts seek summary judgment on their claim for additional contributions related to the Smith Center project, arguing that a prior judgment did not account for all of the contributions that Z-Glass was obliged to make to the Trusts.  Z-Glass responds that the Trusts fail to establish liability for the additional contributions and that the Trusts' damages calculations are insufficient.[44]

---

[40] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

[41] *See, e.g.*, *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[42] *Celotex*, 477 U.S. at 322.

[43] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[44] Z-Glass and ZSW filed individual motions for summary judgment and a joint opposition to the Trusts' motion for summary judgment.  But for ease of understanding, I refer to Z-Glass and ZSW individually because they undertook the projects underlying this suit individually.

### 1.  Z-Glass's liability

The Trusts argue that Z-Glass is liable for unpaid contributions related to the Smith Center project.  Z-Glass responds that the Trusts do not identify the source of its liability and its liability is contradicted by the auditor's statements.  The Trusts reply that liability arises under contract and statute, and that the auditor's statements do not mandate a different result.

The NV Agreement includes classifications for employees performing covered labor.[45] The audit provided by the Trusts indicates that Z-Glass paid employees at the rate for Architectural Glaziers,[46] but the NV Agreement prohibits use of that classification for prevailing-wage projects like the Smith Center project.[47]  Z-Glass's liability thus arises under the NV Agreement.  And the auditor's statement is hardly contradictory as it merely acknowledges the need for further research on the Architectural Glazier issue.[48]  So no genuine issue of fact remains as to Z-Glass's liability for unpaid contributions related to the Smith Center project.

### 2.  Damages

The Trusts' summary-judgment motion relies on an audit prepared by the independent accounting firm RubinBrown.  Z-Glass responds that the auditors are improper percipient and expert witnesses in this case, and it identifies two alleged errors in the audit.

Multiemployer benefit plans like the Trusts have "procedures for the orderly collection of delinquent employer contributions which involve reasonable, diligent and systematic methods

---

[45] ECF No. 128-16 at 20–22.

[46] ECF No. 128-27.

[47] ECF No. 128-15 at 21.

[48] ECF No. 139 at 22.

for the review of employer contribution accounts by means of . . . field audits."[49]  ERISA

requires employers to maintain adequate records,[50] and plans like the Trusts "rel[y] on the

employer's self-reporting and conduct[] periodic audits to ensure the employer's compliance

with its contributing obligations."[51]  Courts thus often rely on audit reports when deciding

summary-judgment motions in ERISA cases.[52]

The audit report indicates that Z-Glass failed to satisfy its obligations to the Trusts after

the prior judgment, totaling $4,906.86 in unpaid contributions, $1,250.55 in interest, $904.16 in

liquidated damages, and $7,077 in audit fees.[53]  With regard to Z-Glass's various admissibility

and foundation arguments, the 2010 amendments to Federal Rule of Civil Procedure

"eliminate[d] the unequivocal requirement" that evidence must be admissible in its present form

in order to be considered at summary judgment.[54]  The rule now mandates only that the

substance of the proffered evidence be admissible at trial, so the Trusts needed to demonstrate

merely that its evidence can be presented in an admissible form.[55]  The Trusts have demonstrated

that the audit reports can be presented as a business record or a summary of voluminous

documents, and numerous courts have relied on audit reports in deciding summary-judgment

motions in ERISA cases.  Z-Glass also cites the Ninth Circuit's decision in *Paddack v.*

---

[49] *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 573–74 (1985) (citation omitted).

[50] 29 U.S.C. § 1059(a).

[51] *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493 (9th Cir. 1990).

[52] *See, e.g.*, *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. B. Witt Concrete Cutting, Inc.*, 685 F. Supp. 2d 1158, 1165 (D. Nev. 2010).

[53] ECF Nos. 128-14 at ¶ 32; 128-27 at 4.

[54] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[55] *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

1  *Dave Christensen, Inc.*[56] regarding the admissibility of audit reports at a bench trial, but the

2  summary-judgment-admissibility rule applies here and, in any event, the Trusts have shown that

3  the audits were regularly conducted and the underlying documents have not been challenged.  So

4  these arguments do not merit denial of the Trusts' motion.

5      Z-Glass also points to two alleged errors in the audit report: (1) the inclusion of work

6  performed at warehouses and (2) the inclusion of an employee who was retained to be available

7  to work but who never actually worked on a project.[57]  But it makes this argument without citing

8  to evidence in the record showing a genuine issue of material fact.[58]  The Trusts respond by

9  identifying underlying documents showing that the disputed work was performed on the job

10 site.[59]  And to the extent that Z-Glass claims that certain hours were not actually worked, it bears

11 the burden of proof on that issue because the audit report was compiled from its own records and

12 it cites no evidence supporting its contention.[60]  Because no genuine issue of fact remains as to

13 whether Z-Glass is liable for $14,138 relating to the Smith Center project, I grant the Trusts'

14 summary-judgment motion on this issue.

15      **C.  ZSW's liability for the Northern California projects**

16      The Trusts seek summary judgment on their claim for additional contributions required

17 by either the NV Agreement or the CA Agreement related to the three Northern California

18 projects.  ZSW moves for summary judgment as well, arguing that the Trusts cannot recover

19

20 _____

[56] *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984).

21 [57] ECF No. 139 at 23.

22 [58] *Id.*

[59] *See* ECF No. 128-73.

23 [60] *See Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1377–38 (9th Cir. 1988).

1  because the CA Agreement was terminated and the Northern California Union abandoned its

2  grievance regarding the projects.

3        The CA Agreement required ZSW to make contributions to the Trusts for work including

4  handling, cutting, processing, preparing, setting or removing all types of glass, sealants and

5  caulks; and fabrication, assembly and installation of metals and other materials relative to store

6  front, curtain wall, and window construction.[61]  And the agreement's subcontracting provisions

7  required ZSW to compel its subcontractors on the three Northern California Projects to comply

8  with its terms.[62]  The audit shows that ZSW and its subcontractors nevertheless failed to make

9  contributions for work on the three Northern California projects, resulting in unpaid

10 contributions of $2,432,960.16, interest in the amount of $460,466.67, liquidated damages in the

11 amount of $368,942.54, and audit fees in the amount of $26,234.[63]  But the audit schedules show

12 that some of these unpaid contributions and damages relate to hours worked after termination of

13 the CA Agreement.[64]

14        ZSW relies on the Ninth Circuit's decision in *Laborers Health & 2 Welfare Tr. Fund v.*

15 *Leslie G. Delbon Co.*[65] to argue that the Trusts cannot enforce contribution obligations because

16 the Northern California Union did not pursue its grievance over the three projects and did not

17 pursue a grievance when the labor agreement was terminated.  But the trust in *Delbon* was

18 attempting to enforce contribution obligations that were due after the disputed termination of a

19

20

---

21 [61] ECF No. 128-20 at 22, 44–45.

   [62] ECF No. 128-16 at 17.

22 [63] ECF Nos. 128-28 at ¶¶ 7–14; 128-61 at 5.

23 [64] ECF No. 128-61 at 5.

   [65] *Laborers Health & 2 Welfare Tr. Fund v. Leslie G. Delbon Co.*, 199 F.3d 1109 (9th Cir. 2000).

1  labor agreement, which the union failed to pursue.[66]  The Ninth Circuit affirmed summary

2  judgment in favor of the employer because the union's decision to do nothing justified the

3  employer's assumption "that its contribution obligations were at an end."[67]  But, unlike in

4  *Delbon*, the termination date is not disputed here and the trusts are attempting to enforce ZSW's

5  contribution obligations that became due before the agreement terminated.  ZSW has not

6  identified, and I have not found, a case holding that a union's failure to properly grieve a dispute

7  about covered work relieves an employer of liability to a multiemployer benefit plan.  So this

8  argument does not merit summary judgment in ZSW's favor.

9  ZSW took the position that, because the three Northern California projects involved units

10  prefabricated in China, they were outside the scope of the CA Agreement.[68]  But it does not

11  appear to argue for summary judgment on this ground.[69]  And, in any event, the CA Agreement's

12  covered-work language is broad and encompasses the "handling, cutting, processing, preparing,

13  setting or removing [of glass] by any means."  ZSW does not identify language in the agreement

14  that would exempt glass units prefabricated in China from its terms.  Nor does ZSW identify any

15  other evidence in the record that would create a genuine issue of fact on the Trusts' claim against

16  it for contribution obligations related to the three Northern California projects.[70]  So I enter

17

18

19

20

---

[66] *Id.* at 1110.

21  [67] *Id.* at 1111.

22  [68] ECF No. 127 at ¶ 53.

[69] ECF No. 122 at 6–7.

23  [70] The objections to the audit reports discussed above apply equally to the damages evidence
here.  But, as discussed above, those arguments are unavailing.

1  summary judgment in favor of the Trusts on ZSW's liability for the unpaid contributions that

2  came due before the termination date and related damages.[71]

3  **D.  Z-Glass's liability for the Northern California projects under the NV Agreement**

4  The Trusts argue that Z-Glass is also liable for unpaid contributions and damages related

5  to the three Northern California projects under the NV Agreement's out-of-area and

6  preservation-of-work clauses.  They argue that, because the NV Agreement remains binding, Z-

7  Glass is liable under it for contributions related to the Norther California projects both before and

8  after the CA Agreement terminated.  Z-Glass does not directly address the continuing validity

9  and applicability of the NV Agreement.  Instead, it argues that the CA Agreement superseded the

10 NV Agreement and that the court does not have jurisdiction under a single-employer theory.

11 "Under the single employer doctrine, two companies may be bound by a union contract

12 signed by one of them if they are a 'single employer' and the employees of each constitute a

13 single bargaining unit."[72]  "To impose a labor agreement on a nonsignatory company under the

14 single employer doctrine, the employees of both companies must be shown to constitute a single

15 bargaining unit."[73]  District courts must defer to the National Labor Relations Board to make this

16 determination.[74]  But the Trusts are not seeking to bind a non-signatory, like ZSW for example,

17 to the NV Agreement.  Rather, they are attempting to enforce that agreement's provisions against

18 an entity that signed the agreement—Z-Glass.  So the single-employer doctrine does not apply.

19

20 [71] The audit report does not calculate the amount of unpaid contributions due prior to the termination date and related damages.

21 [72] *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276 (9th Cir.), *opinion
22 modified on denial of reh'g*, (9th Cir. 1984).

[73] *Id.*

23 [74] *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of
U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470 (9th Cir. 1994).

Z-Glass cites a lone decision from the United States Bankruptcy Court for the District of Utah for the proposition that the CA Agreement superseded the NV Agreement by operation of California law.[75]  But even if this decision were persuasive or binding, its facts are distinguishable because that case involved separate agreements with the *same* union.[76]  Here, Z-Glass and ZSW signed separate agreements with different unions.  Because Z-Glass does not identify—and I have not found—any other authority supporting its argument, the CA Agreement did not supersede the NV Agreement as a matter of law.

Instead, the preservation-of-work and out-of-area-work clauses required Z-Glass to shoulder contribution obligations for work done in Northern California under ZSW's name because Z-Glass's owners controlled ZSW.[77]  Z-Glass does not dispute the applicability of these provisions, which are enforceable in the Ninth Circuit.[78]  Because Z-Glass does not respond to the Trusts' evidence that the NV Agreement remains in force and is applicable here, there is no genuine dispute that Z-Glass is liable for the unpaid contributions and damages related to work on the three Northern California projects that occurred before and after the CA Agreement terminated.  So I grant summary judgment in favor of the Trusts and against Z-Glass on its liability for the three projects.[79]

---

[75] ECF Nos. 139 at 8 (citing *In re CF & I Fabricators of Utah Inc.*, 163 B.R. 858 (Bankr. D. Utah 1994)); 142 at 4–5 (same).

[76] *In re CF & I Fabricators*, 163 B.R. at 868–69.

[77] ECF No. 128-15 at 4, 13–14, 18.

[78] *See Dist. Council No. 16 of Int'l Union of Painters & Allied Trades, Glaziers, Arch'l Metal & Glass Workers, Local 1621 v. B & B Glass, Inc.*, 510 F.3d 851, 858 (9th Cir. 2007)

[79] The Trusts also move for summary judgment on affirmative defenses asserted by Z-Glass and ZSW.  ECF No. 128 at 26–28.  Z-Glass and ZSW do not respond.  I deny this aspect of the motion because my other rulings about these defendants moot it.  To the extent that any dispute implicating ZSW and Z-Glass's affirmative defenses remains, however, the Trusts may file a motion in limine addressing it.

**E.  The other Employers' liability for unpaid contributions and related damages**

Most of the parties' briefing addresses whether Z-Glass is liable for unpaid contributions and damages related to the three Northern California projects under the Trusts' alter ego theories. But because I find that Z-Glass is liable under the NV Agreement, I need not—and do not—consider whether it is also liable under the Trusts' alter ego theories.  The Trusts do not move for summary judgment against the other Employers on these theories, but employers Zhang and ZHI filed a motion on them.

**1.  ERISA alter ego theory**

Under an ERISA alter ego analysis, plaintiffs must first make the "threshold showing" that the defendant companies constitute "a single employer."[80]  "The criteria for determining whether two firms constitute a single employer are (1) common ownership, (2) common management, (3) interrelation of operations, and (4) centralized control of labor relations."[81] Second, plaintiffs must demonstrate that the non-union defendant companies were created or are "being used 'in a sham effort to avoid collective bargaining obligations,' rather than for the pursuit of legitimate business objectives untainted by 'union animus.'"[82]

The Trusts argue that they need not prove the second element because, unlike in prior Ninth Circuit cases, they are not seeking to bind a non-union employer to a collective bargaining agreement that was signed by a related employer.[83]  But rather than support the Trusts' contention, this distinction instead demonstrates the inapplicability of the ERISA alter ego

---

[80] *Nor-Cal Plumbing*, 48 F.3d at 1470 (quoting *Brick Masons Pension Tr.*, 839 F.2d at 1336).

[81] *Id.* at 1471.

[82] *Id.* at 1470 (quoting *Brick Masons Pension Tr.*, 839 F.2d at 1336; *Haley & Haley, Inc. v. NLRB*, 880 F.2d 1147, 1150 (9th Cir. 1989)).

[83] ECF No. 138 at 21–22.

analysis to owners like Zhang and affiliated entities like ZHI.  For example, in *Nor-Cal. Plumbing*, a husband and wife owned a union plumbing corporation and a non-union plumbing corporation.[84]  On summary judgment, the district court found that the corporations were alter egos of each other under the ERISA analysis and pierced the corporate veil against the husband and wife under common law.[85]  The Ninth Circuit reversed on other grounds but noted that, if the husband and wife operated their businesses as sole proprietorships rather than corporations, the plaintiffs could have invoked the alter ego doctrine against them.[86]  Nowhere in that case did the plaintiffs, the district court, or the Ninth Circuit suggest that the plaintiffs could pursue an ERISA alter ego theory against the two contractors *and* their owners.[87]  Here, the Trusts do exactly that, but fail to identify any authority supporting their attempt to shoehorn their claims against one of the employers' owners and an affiliated entity—Zhang and ZHI—into the ERISA alter ego analysis.  So I grant Zhang and ZHI's motions on this theory.[88]

### 2.  Veil-piercing theory

Under federal common law applicable to veil-piercing in cases like this one,[89] courts look to "the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the

---

[84] *Nor-Cal Plumbing*, 48 F.3d at 1469.

[85] *Id.*

[86] *Id.* at 1476.

[87] Indeed, as the Ninth Circuit explained, the common law "veil-piercing doctrine does not come into play in this case unless and until [the unions] establish their right to a money judgment against the [employer corporations] under the alter ego doctrine."  *Id.*

[88] If the alter ego analysis applied, I would still grant the motions on this theory because there is no evidence that Zhang and ZHI created or used ZSW to avoid union obligations.

[89] *Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989).

fraudulent intent of the incorporators."[90]  The plaintiffs "must prevail on the first threshold factor and on one of the other two."[91]  Here, Zhang and ZHI carry their burden to show an absence of evidence of injustice or fraud from recognizing ZSW's corporate form.  The Trusts respond by identifying evidence in the record sufficient to show that the first factor is met here, but they fail to identify any evidence creating a genuine issue of material fact with respect to the other two.[92]  So I grant Zhang and ZHI's motion on this theory as well.

### 3. De facto merger theory

Finally, under a de facto merger theory, the purchaser of a business's assets may be liable for the seller corporation's conduct.[93]  Courts consider "(1) whether there is a continuation of the enterprise, (2) whether there is a continuity of shareholders, (3) whether the seller corporation ceased its ordinary business operations, and (4) whether the purchasing corporation assumed the seller's obligations."[94]  The de facto merger theory is thus inapplicable on its face to Zhang and ZHI.  Although another judge in this district relied on the theory in an ERISA action brought by a trust fund, that case involved entities that were successors in interest to the sole proprietorship that was party to the underlying labor agreement.[95]  Here, there is no allegation that Zhang or ZHI are successors to the parties of the underlying labor agreements—Z-Glass and ZSW.  So I grant Zhang and ZHI's motions on this theory.  And because the Trusts' first and

---

[90] *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979).

[91] *Nor-Cal Plumbing*, 48 F.3d at 1475.

[92] ECF Nos. 137 at 3–4; 138 at 27–29.

[93] *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 112 P.3d 1082, 1087 (Nev. 2005).

[94] *Id.*

[95] *Trustees of Plumbers & Pipefitters Union Local 525 Health & Welfare Tr. & Plan v. Sotelo*, No. 2:13-CV-00657-RFB-NJK, 2018 WL 3240959, at *3 (D. Nev. July 3, 2018).

second claims for relief are premised on its alter ego theories against Zhang and ZHI, I grant summary judgment in their favor on those claims.

### F.  Zhang's liability for the Trusts' breach-of-fiduciary-duty claim

Zhang argues that under controlling Ninth Circuit decisions, employers are not fiduciaries to union pension fund trusts.[96]  The plaintiffs concede that "an employer/owner of a signatory contractor may not be held liable as a fiduciary under ERISA."[97]  So I grant Zhang's motion and enter summary judgment in her favor on the Trusts' fiduciary duty claim.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that the motions for summary judgment filed by the Trusts, Z-Glass, and ZSW **[ECF Nos. 122, 124, 128] are GRANTED in PART and DENIED in PART.**

IT IS FURTHER ORDERED that Zhang and ZHI's motions for summary judgment **[ECF Nos. 123, 125] are GRANTED**.

To summarize, summary judgment is granted:

- In favor of the Trusts and against Z-Glass on the issue of Z-Glass's liability for unpaid contributions and related damages arising from the Smith Center project and the three Northern California projects;

- In favor of the Trusts and against ZSW on the issue of ZSW's liability for unpaid contributions and related damages arising from pre-termination work on the three Northern California projects; and

- Against the Trusts and in favor of Zhang and ZHI on all claims against Zhang and ZHI.

---

[96] *Glazing Health & Welfare Fund v. Lamek*, 896 F.3d 908, 911 (9th Cir. 2018).

[97] ECF No. 138 at 20.

1        IT IS FURTHER ORDERED that WGS's motion to dismiss **[ECF No. 126] is**

2   **GRANTED.**  The Trusts' claims against WGS are dismissed without prejudice.

3        What remains to be determined in this case are (1) the claims against Olin and (2) the

4   Trusts' damages.

5        IT IS FURTHER ORDERED that **this case is referred to the magistrate judge to**

6   **schedule a mandatory settlement conference between and among all remaining parties**.

7   The deadline to file the joint pretrial order is stayed until ten days after that settlement

8   conference.

9        Dated: July 15, 2020                     _____

10                                       U.S. District Judge Jennifer A. Dorsey

11

12

13

14

15

16

17

18

19

20

21

22

23